# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DON M. BATES III, <br><br>                    Plaintiff, <br><br> v. <br><br> KORY ZIMDARS, VICKI SEIBEL-GARVEY, CHRISTINA MINNETI, and DONNA HARRIS, <br><br>                    Defendants. | Case No. 18-CV-50-JPS <br><br><br><br><br><br> **ORDER** |

Plaintiff, who is incarcerated at Racine Correctional Institution ("Racine"), filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). This matter comes before the Court on Plaintiff's motion to proceed *in forma pauperis*. (Docket #2). Plaintiff has been assessed and paid an initial partial filing fee of $37.86. 28 U.S.C. § 1915(b)(4). The Court now turns to screening the complaint pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A.

## 1.     LEGAL STANDARDS

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. *Id.* § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d

773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003); *Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts; his statement need only "'give the defendant fair notice of what the. . .claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "'labels and conclusions'" or "'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "'that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should first "identif[y] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal

conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he was deprived of a right secured by the Constitution or laws of the United States; and (2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give Plaintiff's *pro se* allegations, "'however inartfully pleaded,'" a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## 2. ANALYSIS

Plaintiff's allegations primarily concern the conditions of supervised release imposed upon him in connection with a state conviction for a sex offense. Defendants are all employees of the Wisconsin Department of Corrections Division of Community Corrections (the "DCC"). Plaintiff alleges that he was released from imprisonment into a term of extended supervision on February 10, 2015. (Docket #1 at 1). His supervised release status was revoked nine days later. *Id.* It is not clear whether Plaintiff's present confinement, nearly three years after the relevant events, stems from that revocation or from some other infraction. (Plaintiff reports that he is to be released from imprisonment on February 13, 2018.)

Plaintiff's complaint takes the form of a laundry list of grievances against his supervising probation officer and the officer's supervisors within the DCC. Plaintiff says that Defendants imposed unwarranted and overly burdensome release conditions, enforced those conditions in an unfair way because of personal animus against him, and secured his

revocation based on trumped-up violations of the conditions. The vast number of alleged unlawful acts, each tied to their own set of relevant and irrelevant federal laws and constitutional provisions, makes divining the viable claims difficult. To that end, the Court finds it expedient to first describe the legal constraints on claims like Plaintiff's, then identify the numerous deficiencies in the complaint, and finally set Plaintiff the task of amending the complaint.

### 2.1 Legal Principles Governing Challenges to Supervision

The Court begins by reviewing the applicable law. First, to the extent Plaintiff seeks release from his present confinement, such a claim must be made in a habeas petition, not a Section 1983 action. The Seventh Circuit holds that conditions of probation are a form of custody. *Drollinger v. Milligan*, 552 F.2d 1220, 1225 (7th Cir. 1977); *Williams v. Wisconsin*, 336 F.3d 576, 580 (7th Cir. 2003). A challenge to those conditions is an attack on the fact or duration of the plaintiff's confinement, which "is the traditional function of the writ of habeas corpus." *Drollinger*, 552 F.2d at 1225. Plaintiff has not named the prison warden or expressly sought release, so the Court will not transform his complaint into a habeas petition. *Henderson v. Bryant*, 606 F. App'x 301, 303–04 (7th Cir. 2015). Any such claim will have to be brought, if at all, in a separate proceeding.

Second, Plaintiff may not proceed on a claim "for having been recommitted based on the violation of release conditions that he contends are unconstitutional[.]" *Id.* This is so because, if he was successful, it would "vitiate the basis for his commitment, and *Heck v. Humphrey*, 512 U.S. 477 (1994), bars civil damages actions where a 'judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.'" *Id.* Thus, to the extent Plaintiff was revoked on fabricated violations of release
Page 4 of 13

conditions, however unfair he may think those conditions were, *Heck* bars any challenge thereto. His opportunity to dispute the appropriateness of the conditions and the facts underlying the alleged violations thereof was at the revocation hearing and through whatever state appeals or federal habeas actions may have followed; a Section 1983 damages action is no substitute. *See Reilly v. Herrera*, 622 F. App'x 832, 834 (11th Cir. 2015). In the event Plaintiff successfully overturns his revocation, he may revisit this claim. *See Henderson*, 606 F. App'x at 304.[1]

Third, Plaintiff cannot be allowed to seek an order preventing future imposition of release conditions, even ones similar to those that preceded his revocation. *See id.* "[U]nless and until they are imposed on him again, that type of challenge is premature." *Id.* Because he is presently incarcerated, he is not subject to the conditions and cannot challenge them at this time. *Id.*

With those claims set aside, the Court turns to the lone type of claim that the Seventh Circuit in *Henderson* held could survive screening in cases like Plaintiff's:

> Henderson appears to seek damages for having had to endure for three months the restrictive conditions of release (or abusive actions of the defendants) that did not lead to his recommitment but which he contends to have been unconstitutional. Because a successful damages action challenging those conditions or actions would not imply the

---

[1]This result holds even if Plaintiff's present incarceration is not related to his February 2015 revocation. As several Circuit courts have explained, a plaintiff may not avoid a *Heck* bar by simply waiting until his release to file a Section 1983 action. If he was revoked, Plaintiff would have had time available to him while incarcerated to pursue an appeal or post-conviction relief from the revocation. His failure to avail himself of those remedies would be fatal to a challenge to the revocation in a later Section 1983 suit. *Reilly*, 622 F. App'x at 834; *Guerrero v. Gates*, 442 F.3d 697, 705 (9th Cir. 2006).

> invalidity of his current confinement, *Heck* does not bar a § 1983 claim challenging them. But these claims face a different hurdle: insofar as they seek damages from the defendants for enforcing release conditions that a court specifically ordered, the defendants may be protected by absolute quasi-judicial immunity, which would bar any recovery. But for two reasons it is too soon to treat these claims as blocked by absolute immunity. First, Henderson contends that, by barring all contact with family members and entering and searching his home at night while he slept, the defendants enforced the court's order in an unconstitutional manner; a claim that a defendant enforced a court order in an unconstitutional manner is not necessarily barred by quasi-judicial immunity. Second, the defendants have not yet been served and so have not yet advanced any defenses, which the district court should ordinarily consider in the first instance. Henderson may thus proceed on this one aspect of his case.

*Id.* at 304–05 (citations omitted). Thus, *Henderson* teaches that a parolee may proceed only on claims that he was subjected to conditions beyond those authorized in the applicable criminal judgment or other valid orders, that he was subjected to unconstitutional conditions which did not form the basis for his revocation, or that his probation officer imposed conditions (that did not form the basis for his revocation) in an unconstitutional manner.

### 2.2 Plaintiff's Allegations Under *Henderson*

The complaint does not clearly explain the full extent of the conditions of supervision to which Plaintiff was subject, the criminal case in which those conditions were imposed, and a complete list of the reasons for his revocation. Without these facts, the Court cannot conclude that Plaintiff's claims are either valid or invalid under the above-described legal principles.

To better demonstrate this difficulty, the Court will briefly review Plaintiff's factual allegations against each Defendant. First is his supervising probation officer, Kory Zimdars ("Zimdars"), whom Plaintiff asserts imposed rules of supervision that he knew would interfere with Plaintiff's ability to work, harm his health, intrude upon his personal privacy, and impede his rehabilitation. (Docket #1 at 4). Plaintiff's litany of complaints about his probation officer includes, in part, that Zimdars:

(1) seized the keys to Plaintiff's home and office;
(2) seized some of his mail;
(3) forced him to obtain a land-line telephone in order to facilitate the functioning of an ankle location monitoring device;
(4) confined Plaintiff's movement to one Wisconsin county and restricted his out-of-state travel to three days (over an undefined period);
(5) forced him to apply for permission to go "to virtually any public or private place where children may, or may not, be present";
(6) prohibited Plaintiff from possessing a personal computer or smartphone, among other types of electronic devices with Internet access;
(7) threated to issue a warrant for Plaintiff's arrest prior to his release from incarceration at Racine without cause;
(8) submitted fraudulent documents to prison officials regarding Plaintiff's alleged financial obligations to the court, thereby unlawfully siphoning some of Plaintiff's inmate trust account funds;
(9) engaged in "surprise manipulation" of Plaintiff's prison release account funds by impeding his ability to pay for psychiatric medications;
(10) accused Plaintiff of altering his medication regimen without approval;

(11) ordered Plaintiff to submit to sex offender treatment by a person who Plaintiff alleges has a history of demeaning and mistreating patients;

(12) accused Plaintiff of violating his release conditions by owning a smart television; and

(13) prohibited the use of the popular TV streaming services and for penalizing Plaintiff for his mental disability.

*Id.* at 4–8. These actions allegedly violated a wide variety of Plaintiff's constitutional rights, including those arising under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. *Id.*

Plaintiff next alleges that Defendant Vicki Seibel-Garvey ("Seibel-Garvey"), Zimdars' supervisor in the DCC, supported and directed Zimdars' campaign of mistreatment against Plaintiff. *Id.* at 8–9. According to Plaintiff, she knew of the ongoing deprivations of Plaintiff's rights but failed to intervene and indeed encouraged Zimdars. *Id.*

As for Defendant Christina Minneti ("Minneti"), the DCC field supervisor (ostensibly supervising both Zimdars and Seibel-Garvey), Plaintiff alleges that she refused to amend Plaintiff's conditions after being notified of his belief that they are unlawful, nor did she seek to compromise on these issues in light of Plaintiff's particular circumstances. *Id.* at 9–10. Additionally, Plaintiff claims that Minneti refused to abide by the direction of her supervisor, Defendant Donna Harris ("Harris"), who apparently did amend Plaintiff's conditions to allow use of a computer and smartphone as long as "monitoring software" was installed on them. *Id.*

Finally, Plaintiff includes Harris as a defendant despite acknowledging that she apparently did something he liked—removing the computer and smartphone restriction. *Id.* at 10. He nevertheless maintains that she took no steps to remedy the other ongoing constitutional violations

and indeed sent him an unsolicited letter stating that the DCC regional office would not intervene as he requested. *Id.* For both Minneti and Harris, Plaintiff's theory is less about their own actions and seemingly more about their subordinates' treatment of him. *See id.*

As the Court's description of the claims makes clear, the primary problem with the complaint is the inability to separate claims about the conditions themselves, which *Henderson* will not allow in a Section 1983 action, from claims about unfair application of those conditions, which is permitted. For example, is Plaintiff's gripe about having his mail and keys seized an attack on a condition of release or Zimdars' unilateral, unconstitutional action? It is impossible to say. Plaintiff says at times that Zimdars "imposed" or "enforced" unfair rules of supervision, which sounds like a *Henderson*-barred claim, but at other moments alleges that Zimdars went beyond those conditions to threaten revocation without cause or deny Plaintiff his medications. *See id.* at 4–8. Given these contradictions, the Court cannot fully evaluate Plaintiff's claims at present.

The Court will, therefore, direct Plaintiff to file an amended complaint addressing these deficiencies. If he wants to proceed, Plaintiff must file an amended complaint on or before **March 5, 2018**. Failure to file an amended complaint within this time period will result in dismissal of this action.

The amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). In *Duda*, the appellate court emphasized that in such instances, the "prior

pleading is in effect withdrawn as to all matters not restated in the amended pleading[.]" *Id.* at 1057 (citation omitted). If an amended complaint is received, the Court will screen it pursuant to 28 U.S.C. § 1915A.

### 2.3 Motion for Appointment of Counsel

Also pending before the Court is Plaintiff's motion requesting the appointment of counsel. (Docket #7). As a civil litigant, Plaintiff has no automatic right to court-appointed counsel. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney to represent any person unable to afford counsel." The court should seek counsel to represent the plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). The Seventh Circuit has emphasized that "[t]he question is not whether a lawyer would present the case more effectively than the pro se plaintiff; 'if that were the test, district judges would be required to request counsel for every indigent litigant.'" *Pruitt*, 503 F.3d at 655 (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006)) (internal quotation omitted). Instead, "[t]he question is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Id*.

Plaintiff's request for counsel must be denied because, notwithstanding his efforts to obtain his own counsel, he has not presented any evidence or argument showing that he cannot litigate this matter competently on his own. First, Plaintiff says that his lack of legal training

and access to legal research materials will limit his ability to litigate this case. (Docket #7 at 1). Plaintiff's lack of training, while unfortunate, brings him in line with practically every other prisoner litigating in this Court. On its own, it is not a sufficient reason for appointing counsel. Nor is Plaintiff's diminished access to legal research a matter this Court should remedy with provision of counsel, for many non-incarcerated persons suffer from similar difficulties and yet are expected to pay for their own lawyers if they want help with research or preparation of court filings. Plaintiff's point seems to be that counsel would do a better job than he, but the Seventh Circuit has rejected this as a basis for appointment of counsel. *Pruitt*, 503 F.3d at 655.

Moreover, the Court finds that, at least at this early stage in the case, the issues presented are not so complex that Plaintiff cannot be expected to adequately address them. Plaintiff's only attempt to convince the Court otherwise is to state that the case is "difficult," without elaboration. (Docket #7 at 1). As a party seeking relief in this Court, Plaintiff is expected to familiarize himself with the substantive and procedural rules that will bear on his case. Plaintiff's plea that he is unfamiliar with federal litigation is, therefore, unpersuasive. *Id.* Likewise, the mere fact that Defendants will be represented by counsel is not a reason why Plaintiff should be afforded representation.

Finally, Plaintiff has not submitted any evidence that he suffers from cognitive, behavioral, or other limitations affecting his ability to present his arguments in a cogent fashion. *See Henderson v. Ghosh*, 755 F.3d 559, 565 (7th Cir. 2014). His filings thus far suggest that he has no such limitation. Plaintiff's reference to his mental illness related to his sex offense, (Docket #7 at 1), is not a condition affecting his ability to litigate.

As such, the Court concludes that recruitment of counsel in this case is not justified at this time, and will deny Plaintiff's motion for appointment of counsel without prejudice. The Court further notifies Plaintiff that, as will be explained in the forthcoming trial scheduling order, the Court generally does not consider requests for appointment of counsel until, at earliest, the close of discovery.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (Docket #7) be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that on or before **March 5, 2018**, Plaintiff shall file an amended pleading curing the defects in the original complaint as described herein;

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined; and

**IT IS FURTHER ORDERED** that Plaintiff shall submit all correspondence and legal material to:

>   Office of the Clerk
>   United States District Court
>   Eastern District of Wisconsin
>   362 United States Courthouse
>   517 E. Wisconsin Avenue
>   Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter. As each filing will be electronically scanned and entered on the docket upon receipt by the clerk, Plaintiff need not mail copies to Defendants. All Defendants will be served electronically through the court's electronic case filing system. Plaintiff should also retain a personal copy of each document filed with the Court.

The Court further advises Plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 12th day of February, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge